### INDIANA LIMESTONE COMPANY *v.* MURPHY.

[No. 14,185. Filed August 13, 1931.]

*William E. Clark, W. F. Brooks, Robert G. Miller, James W. Blair* and *William R. Martin,* for appellant.

*Regester & Regester,* for appellee.

BRIDWELL, P. J.—Appellee brought this action against appellant to recover damages. It is alleged in the complaint that appellee is the owner of certain described real estate in the city of Bloomington, Indiana, on which is located a five-room dwelling house used by appellee and her family as a residence; that appellant is engaged in quarrying, sawing, turning and selling oolitic limestone and preparing such stone for building and other purposes; that the Bowman-King mill, one of the places owned and used by appellant in sawing, turning and cutting said limestone, is adjacent to plaintiff's property; that, prior to the acquiring of such mill by appellant, the gang saws used to saw limestone in said mill were operated and had a speed of about 70 revolutions

per minute and, when so operated, caused no harm to appellee's property; that appellant increased the speed of such gang saws and caused them to operate at a speed of 97 revolutions per minute; that this speed in the operation of said saws caused a vibration of the building and grounds of appellee, which vibration caused the dwelling house to shake and vibrate continually during the time said mill was so operated, and that said mill was operated practically continually day and night and had been so operated for the past two years; that said vibration was of such an extent that it shook the shingles from the roof of said house in places, caused the plastering on said house to crack, become loose and fall off, caused the cement and mortar to fall out of the foundation and cellar walls, caused the posts and supports under the floor to become sunken and displaced, thus causing the floor to sag and sink down, all of which has damaged said building and property in the sum of $3,000. An answer of general denial was filed to the complaint. A trial by jury resulted in a verdict for appellee in the sum of $500. Appellant filed its motion and reasons for a new trial, which motion was overruled, and appellant duly excepted. Judgment was rendered on the verdict, and this appeal taken.

The only error assigned and presented is the alleged error of the court in overruling appellant's motion for a new trial. Appellant contends that said motion should have been sustained for each of the following reasons: (a) That the verdict of the jury is not sustained by sufficient evidence; (b) that the verdict of the jury is contrary to law; (c) that the court erred in permitting witness Charles Murphy, appellee's husband, to testify what was necessary to be done to restore the plastering to its original condition; (d) that the court erred in permitting said witness to testify that the entire house would have to be raised through the center in order to

restore the floors to their original condition; (e) that the damages assessed by the jury are excessive and too large.

It is asserted by appellant that there is no competent evidence to support the verdict, that the verdict is based upon unreasonable inferences drawn by the jury, and that the conclusion reached is contrary to the facts established by testimony in the record that is not disputed.

It is well settled that there must be competent evidence sufficient, if considered alone, to establish all the material allegations of a complaint, in order that a recovery thereon may be had. It is equally well settled that this court will not weigh the evidence, in case of conflict thereon, and if there be some evidence fairly sustaining every material fact essential to recovery, a cause will not be reversed for insufficiency of the evidence. Both propositions are so well established as to require no citation of authorities in the support of either.

An examination of the record discloses no conflict in the evidence relative to the ownership and location of the properties of the parties, nor in regard to the fact that, after appellant acquired its property, and began operating said mill, vibrations occurred at appellee's house when the gang saws were being run, and did not occur when the mill was idle and the saws not running. Neither is there any conflict as to the intensity of the vibrations, as but one witness gave direct testimony concerning same. At the request of both parties, Arthur L. Foley, a teacher of physics in Indiana University, made certain tests regarding vibrations both at the mill of appellant and at the home of appellee. One test was made with an instrument which was a modification of the type of instrument used to measure vibrations of the earth when there are earthquakes or explosions at distant points. This test disclosed both horizontal and ver-

tical vibrations at the mill and at the home, but the magnitude of such vibrations was quite small, ranging at the mill from an amount equivalent to the thickness of a thin sheet of tissue paper to about the thickness of two sheets of ordinary book paper, the horizontal being greater than the vertical. At the home of appellee, when the instrument was placed on the floor, the vibrations recorded were about one-fifth or one-sixth as much as at the mill; this vibration was going on all the time, but, when any person walked across the floor, the instrument recorded vibrations ranging from two to five times as much as normal vibration when everybody was perfectly still. This witness made other tests by placing water and mercury, one fluid at a time, in pans, setting on a shelf at the home of appellee, and such tests also showed that vibrations existed. In answer to questions propounded by appellant's counsel as to whether any vibrations recorded at the home of appellee as the result of the operation of the mill were of sufficient violence to damage the house, witness stated in answer to one question: "I should not think they would be great enough to do that"; and, in answer to another similar question, "I don't think vibrations of so small an amount as I measured would injure his home." There is evidence that the mill had been operated for many years prior to the time that appellant acquired the mill property, and that appellee had occupied the dwelling house owned by her for several years at that time; that, at the time when appellant began operating said mill, the house of appellee was in a good state of repair; that shortly afterwards appellee and her husband first noticed the vibrations; that the husband, upon inquiry of the superintendent in charge of the mill, was informed by him that the speed of the gang saws had been increased by 10 to 15 revolutions per minute; that, for a period of approximately three years after appellant began oper-

ating the mill, it was run some of the time both day and night and was idle at one time for three or four months; that, after said vibrations were noticed, the doors of the house "got out of shape" and would not close or open properly; that the windows became "out of line" and could not be raised and lowered; that the floor "swagged" to the center; that the plastering commenced to crack in all directions and became loose; that the wall paper "came off in big slabs"; that the mirrors in the house would vibrate in such manner as to cause a blur when objects were reflected therein; that the putty shook loose from the window panes and they rattled continuously when the gang saws were running; that, when you walked on the floor with your shoes off, you could feel the vibrations; that, when the gang saws were not running, there was no vibration in the house, in the mirrors, floor or windows.

In determining what has been established by the evidence, courts and juries may consider not only the facts directly proved, but also all reasonable inferences that may be drawn therefrom. *Russell* v. *Scharfe* (1921), 76 Ind. App. 191, 130 N. E. 437; *Balzer* v. *Waring* (1911), 176 Ind. 585, 95 N. E. 257, 48 L. R. A. (N. S.) 834; *Spickelmier Fuel, etc., Co.* v. *Thomas* (1924), 81 Ind. App. 604, 144 N. E. 566.

We are of the opinion that the evidence in the record is sufficient to sustain the verdict of the jury. From the facts proved, the jury had the right to infer that the damages occasioned to appellee's dwelling house were the results of vibrations caused by the operating of appellant's mill in running the gang saws, used in cutting stone, at the rate of speed disclosed by the evidence. When the mill was not operating, no vibrations were felt. Before appellant began operating the plant, there had been no injury to the dwelling

house. The vibrations were continuous when the gang saws were running; they were not evident at other times, but were recurrent with the operation of the plant. The facts as to the condition and state of repair of appellee's dwelling house before and after appellant began operating its stone mill are not controverted. In the light of all the evidence, we cannot hold, as we are asked to do, that the verdict of the jury is the result of an inference arbitrarily drawn, without reason to uphold it or evidence in its support.

It is claimed that the court erred in permitting appellee's husband to testify as to what was necessary to be done to restore the plastering and the floors to their original condition. This witness had testified in detail as to the condition of both plastering and floors, and the facts were before the jury. His testimony on this subject-matter was as to conditions existing both before and after the claimed injuries occurred. The matters inquired about and concerning which the witness was permitted to answer were of such nature that it did not require an expert to determine what was necessary to be done to restore conditions. No error was committed in this regard.

Appellant also contends that the damages assessed by the jury are excessive, but this contention cannot prevail, as all the evidence offered on the question would have permitted the recovery of a greater amount than that awarded. We find nothing in the record to induce the belief that the jury acted from any improper motive.

Judgment affirmed.