WHITAKER, ADMINISTRATOR OF THE ESTATE OF SALYER, DECEASED *v.* BORNTRAGER.

[No. 29,208. Filed December 1, 1954.]

*Louis Reidelbach,* of Winamac, *Robert H. Moore,* of Gary, and *John Hopkins,* of Rensselaer, for appellant.

*Cope J. Hanley,* of Rensselaer, for appellee.

GILKISON, J.—A single question is presented by this appeal. That question is: Did the trial court err in sustaining a motion for a peremptory instruction in favor of the defendant, at the close of plaintiff's evidence? If that action was error the cause should be reversed. Otherwise it should be affirmed. When may a trial court properly give the trial jury a peremptory instruction to find for the defendant? The answer seems to be:

When there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant. *Jackson Hill Coal and Coke Co.* v. *Bales et al.* (1915), 183 Ind. 276, 279, 108 N. E. 692. *Slinkard* v. *Babb* (1953), 125 Ind. App. —, and cases there cited. 112 N. E. 2d 876, 878; *Gregory* v. *The C. C. C. and I. R. R. Co.,* 112 Ind. 385, 388, 14 N. E. 228.

When there is some evidence or legitimate inference supporting each material allegation of the complaint, the court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the party against whom the motion for a peremptory verdict is directed. *Jackson Hill Coal and Coke Co.* v. *Bales et al.* (1915), 183 Ind. 276, 280, *supra; American Food Co.* v. *Halstead* (1905), 165 Ind. 633, 638, 76 N. E. 251. See also *Heath* v. *Sheetz* (1905), 164 Ind. 665, 667, 74 N. E. 505. *Slinkard* v. *Babb* (1953), 125 Ind. App. —, and cases there cited; 112 N. E. 2d 876, 878, *supra.*

In determining whether a peremptory instruction should be given the court must accept as true all

facts which the evidence tends to prove and draw, against the party requesting such instruction, all inferences which the jury might reasonably draw. *Orey* v. *Mutual Life Insurance Company of New York* (1939), 215 Ind. 305, 306, 19 N. E. 2d 547; *Holtz* v. *Elgin, etc., Ry. Co.* (1951), 121 Ind. App. 175, 98 N. E. 2d 245; *Chacker* v. *Marcus* (1949), 119 Ind. App. 672, 674, 86 N. E. 2d 708, 89 N. E. 2d 455; *Balzer* v. *Waring* (1911), 176 Ind. 585, 594, 95 N. E. 257, 48 L. R. A., N. S. 834.

In the light of the compelling laws noted, we shall consider the complaint and the evidence and inferences tending to sustain it.

The complaint alleges plaintiff is the lawful administrator of the estate of Burnie Salyers, who died on November 3, 1949. That decedent left "as his next of kin and heirs at law," a number of persons specifically named. That at and prior to the date of his death, decedent was contributing to his sister, Martha Howard, for the support of her and her two minor children. That decedent was killed while walking northward on the west edge of the pavement of U. S. highway 53, some two miles north of Rensselaer, Indiana, at 5:15 P.M., November 3, 1949, by a pickup truck driven by the appellee southward on that highway at that time and place.

Four specific acts of negligence are charged against appellee, as follows:

(1) Driving the truck at a high and dangerous speed, considering the traffic and atmospheric conditions, to-wit: 60 miles per hour.

(2) So driving without keeping a reasonable lookout ahead for persons in the lawful use of the highway.

(3) And without having the truck under reasonable control, to avoid hitting pedestrians, lawfully using said highway.

(4) Without sounding the horn or giving any warning of her approach to pedestrians lawfully on the highway.

To support his complaint, plaintiff presented evidence as follows:

Daryl M. Ford, a state policeman, testified that he was called to investigate the collision about 5:30 P.M., Nov. 3rd, 1949. The streets were not lighted and it was dark. He went to Donnelly's corner. The ambulance was there. There was a pickup truck that had been involved in an accident with a pedestrian. If the body was there it was in the ambulance. He did not question the defendant that night, but did the next day. She said she was going South on 53, and at the intersection or close to it she was meeting a farm tractor at the time of the accident. All at once there was someone in front of her truck and the next thing she knew she struck the object, whatever it was. The policeman told her she had struck Burnie Salyers. When the policeman got to the scene, the pickup truck was there, about 175 feet south of Donnelly's corner on the west side of the road angling—the front end toward the northeast and the rear end toward the southwest. It had run off the highway about 100 feet from the intersection, turned around and headed back. The body was thrown about 100 feet after it left the car. We could see where it rolled on the ground before it came to a stop. There was blood where the body stopped. It stopped about 125 feet south of the intersection on the west side of the road, and 80 feet north and west of the point where the truck came to a stop. The grill and radiator in the center of the front of the truck was damaged. He went to the funeral home and saw the dead body.

As a witness for the plaintiff, the defendant, Isabelle Borntrager, among other things, testified:

"I was driving the truck on the evening in question. It was dark and I had the lights on. I saw the decedent just a matter of seconds before the accident. I saw the man just after I came in contact with him. I did not see what happened to him when he was hit, but I knew I hit him. I now know he was Burnie Salyers. My car did not turn around immediately after I put the brakes on but it did eventually. I did not sound the horn at any time just before hitting him."

Martha Howard, sister of decedent, testified of her own and her two infant children's dependency upon decedent for support and that prior to his death decedent regularly contributed $25.00 a week for their support.

Henry Whitaker, brother-in-law of decedent, arrived at the scene of the accident about 5:30 P.M. the evening it occurred. His evidence is substantially the same as the state policeman, Ford.

He testified that he knew decedent had been contributing to the support of his sister, Martha Howard. Decedent worked for this witness for 75 cents an hour and was a good worker.

It was in evidence that decedent was 54 years old. It was stipulated that the life expectancy of a man of this age is 18.09 years according to American mortality tables; and that decedent received a compound fracture of his foot and left leg, fracture of a femur, shock and abrasions from which he died November 3rd, 1949.

The foregoing evidence and the inferences that a jury might legitimately draw therefrom are proper matters for it to consider in determining each of the charges of negligence alleged. *Balzer* v. *Waring* (1911), 176 Ind. 585, 594, 95 N. E. 257, 48 L. R. A., N. S. 834 *supra; Russell* v. *Scharfe* (1921), 76

Ind. App. 191, 194, 197; *Indiana Limestone Co.* v. *Murphy*, 93 Ind. App. 76, 81, 177 N. E. 350.

Frequently, the physical facts connected with the matter under inquiry speak with more convincing verity than the statements of witnesses no matter how truthful they try to be. In discussing cross-examination in Sec. 639 of his General Practice, Judge Elliott, says:

> "It is, therefore, of great importance to bring out the details of time, place and position, since from these may often spring inferential facts which take from the testimony every vestige of possibility. . . ."

If this is true as to cross-examinations, it is likewise true on examinations in chief, where, as in this case, there is but one witness to the collision living and that witness is the party defendant. Such evidence is frequently called "real evidence," and circumstantial evidence. It has been said that "Real evidence 'is, it is obvious, of the highest probative force when skillfully used . . .'" Elliott's General Practice, Vol. 1, Sec. 422, p. 522. When all the known physical conditions and circumstances surrounding an accident are proved as in this case and there are legitimate inferences that naturally flow therefrom that by a fair preponderance might convince reasonable persons that the collision was caused by defendant's negligence as alleged, while other equally reasonable persons might not be so convinced thereby a situation exists for solution by the jury only under proper instructions from the court. Under such conditions it is error to give a peremptory instruction to find for the defendant.

For the reasons stated the judgment is reversed with instructions to sustain the motion for new trial, and further action agreeable with this opinion.

NOTE.—Reported in 122 N. E. 2d 734.