## MORROW, INC. *v.* MUNSON ET AL.

[No. 18,926. Filed May 20, 1958. Rehearing denied June 19, 1958. Transfer denied October 27, 1958. Rehearing on transfer dismissed December 2, 1958.]

114

*Mark P. Lockwood*, of Princeton, *Rice & Cheatham*, and *Nat H. Youngblood*, both of Evansville, for appellant.

*Fred P. Bamberger* and *Ortmeyer, Bamberger, Ortmeyer & Foreman*, of Evansville, for appellees.

PFAFF, J.—Appellant, Morrow, Inc., brought this action against appellees, Marion Munson, Frank Harris and Calvin Harris, doing business under the name, title and style of Quality Beverage Company, Wesley A. Slocum, to recover damages to its White motor tractor and Fruehauf trailer resulting from a collision with a 1948 Federal tractor and trailer owned by appellees Harris and Harris and operated by their agent and servant, the appellee Slocum. The appellees Harris and Harris filed a counter-claim for damages to their tractor and trailer and for the loss of a cargo of merchandise destroyed by reason of said collision.

Appellees filed an answer in one paragraph in compliance with Rule 1-3 of the Supreme Court, thereby denying the alleged negligence and damage.

Trial was had by jury and at the close of appellant's evidence, the court directed a verdict for appellee upon appellant's complaint. Following all the evidence, the jury returned a verdict in favor of the appellees upon their counter-claim in the sum of $8300.

Inasmuch as all questions which appellant attempts to present here depend upon the evidence, they may not be considered if the evidence is not properly in the record.

The bill of exceptions containing the evidence is certified by the judge whom this court knows judicially was the regular judge of the trial court. Judicial notice is taken as to who are the regular judges of the circuit court of this state. *Zonker* v. *Cowan* (1882), 84 Ind. 395, p. 397; *Heacock* v. *Arnold* (1929), 90 Ind. App. 476, 479, 169 N. E. 89; *Folger* v. *Barnard* (1920), 73 Ind. App. 523, 525, 125 N. E. 460. In *Folger* v. *Barnard, supra,* this court said:

"We judicially know that Fred C. Gause was judge of the Henry Circuit Court. He assumed jurisdiction of this case, and afterwards there was a trial by jury, which resulted in a verdict and judgment for appellee. At no time during the course of the proceedings in the trial court did appellants make any objection to Judge Gause assuming jurisdiction of and trying the case. The Supreme Court in *Perry* v. *Pernet* (1905), 165 Ind. 67, 74 N. E. 609, 6 Ann. Cas. 533, held that when a judge has been called to try a cause, and no objection is made at the time, or to his sitting in the cause when he assumes to act, all objections thereto will be deemed waived on appeal. See, also, *Lillie* v. *Trentman* (1891), 130 Ind. 16, 29 N. E. 405; *Jordan* v. *Indianapolis Coal Co.* (1913), 52 Ind. App. 542, 100 N. E. 880; *Larrance* v. *Lewis* (1912), 51 Ind. App. 1, 98 N. E. 892. Appellants' conduct in this matter looks too much like an attempt to gamble on the decision of the court, and, losing the wager, pull down the stakes, which we cannot permit."

Appellees argue the insufficiency of the bills of exceptions inasmuch as they do not show that the regular judge presided at the trial of the case. There is nothing anywhere in the record to suggest that any other judge presided. In view of the presumptions in favor of the action taken in the trial court, appellees' argument is without merit. *State Building, etc. Assn.* v. *Brackin* (1901), 27 Ind.

App. 677, 682, 62 N. E. 91; Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §2790, Comment 5, p. 371; West's Indiana Law Encyclopedia (Appeals), §514, p. 413, with cases cited.

Appellees argue that what purports to be a bill of exceptions containing the evidence lacks essential features of such a bill. It is true that there is no caption or formal commencement or introductory statement of any kind. Appellees say it is further defective in that:

1. It does not show the date of the trial;

2. It does not show that the evidence was introduced upon the issues joined by the pleadings;

3. It is not identified as being a bill of exceptions; and,

4. That there is nothing to show who the parties were on whose behalf the evidence was given.

In determining the sufficiency of a bill of exceptions we must examine it as a whole. In *Kist* v. *Coughlin* (1944), 222 Ind. 639, 648, 57 N. E. 2d 199, 57 N. E. 2d 586, our Supreme Court said:

"The appellees further claim that the evidence is not in the record because the certificate of the judge does not state that it contains all of the evidence given in the cause, and the appellants refer to the certificate of the reporter wherein the statement is made that it contains all of the evidence. In order to determine this question we must examine the bill of exceptions as a whole to ascertain whether or not it contains words which indicate clearly and unmistakably that the bill does contain all of the evidence."

The record discloses that an order book entry made on the 30th day of July, 1956, recites that plaintiff's bill of exceptions No. 1 containing the evidence was filed. The questioned bill then follows, and it bears

the file mark of the Clerk of the trial court showing that it was filed on that date. The dates various witnesses testified appear in the bill and such dates correspond with the order book entries showing the dates of the trial. The testimony of witnesses is preceded by a statement as to who called the witness, the plaintiff or defendants and counter-claimants. Following the evidence is the statement, "and this was all the evidence given in said cause." The Reporter's certificate bears the title of the case and the name of the court and certifies that the evidence preceding her certificate is a full, true and complete transcript of all the evidence given in said cause. The judge's certificate is signed by the regular judge of the trial court and bears the title of the case and the name of the court and certifies that, "This Bill of Exceptions No. 1 correctly sets forth and contains all the evidence given in the trial of said cause."

The following statement contained in *Hayes Freight Lines* v. *Oestricher* (1946), 117 Ind. App. 143, 68 N. E. 2d 792, is appropriate here:

"As to the failure of the transcript to show a filing of the bill, or where or in what court it was filed, the bill itself bears the file mark of the clerk of the Warrick Circuit Court (*Walner* v. *Capron* (1946), 224 Ind. 267, 66 N. E. (2d) 64) and the certificate of the clerk of that court plainly recites that '. . . the Bill of Exceptions incorporated in this transcript is the original and that the same was filed in the clerk's office and made a part of the record in this cause . . .' on the date as shown.

"As to the other objections, the bill is certainly not a work of art, and under the statutes formerly governing appeals, as interpreted and applied in the earlier cases in this and the Supreme Court, it might be successfully challenged. The present rules, however, as adopted and promulgated by our Supreme Court, were designed to simplify appellate procedure, and remove the pitfalls that for-

merly plagued the unwary, and they have been uniformly liberally construed to accomplish that purpose.

"It is true the bill has neither formal commencement nor conclusion, nor in fact any introductory statement as to what it purports to be or to contain. But we need not confine ourselves to an examination of commencement or conclusion. In determining its sufficiency as a bill of exceptions against the objections urged we must examine the instrument as a whole. *Kist* v. *Coughlin* (1944), 222 Ind. 639, 57 N. E. (2d) 199, 57 N. E. (2d) 586. Such an examination reveals, following a caption which discloses the title, number and venue of the case and the appearances therein, a typewritten recital of the evidence, and following that the statement 'And this was all of the evidence introduced and given in the trial of this case.' The signature of the trial judge was affixed to the 'Judge's Certificate to Bill of Exceptions' which followed.

"The rule requires the trial judge to sign a bill of exceptions *if correct*. Rule 2-4. By his signature he certified as correct that which preceded it, including the statement 'And this was all of the evidence introduced and given in the trial of this case.' In our opinion an examination of the instrument as a whole discloses it to be a bill of exceptions which contains the evidence, all of the evidence and the only evidence given in the cause."

In our opinion the bill of exceptions in the present case examined as a whole is sufficient as a bill of exceptions containing the evidence.

Appellant urges that the court erred in sustaining the motion of the appellees for a peremptory instruction at the close of appellant's evidence and in giving to the jury appellees' instruction which directed the jury to return a verdict for appellees upon the issues formed on appellant's complaint.

In passing upon this question we may consider only

the evidence favorable to the appellant, the party against whom the motion was directed and all reasonable inferences deducible therefrom. *Callahan, Admr. etc.* v. *N. Y. Cent. R. R. Co.* (1955), 125 Ind. App. 631, 634, 125 N. E. 2d 263; *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734; *Phares* v. *Carr* (1952), 122 Ind. App. 597, 106 N. E. 2d 242. As stated by this court in *Phares* v. *Carr, supra,* at page 599:

> "The question in this case having been presented upon sustaining a motion for a directed verdict at the conclusion of plaintiff's evidence, it was not within the province of the trial court to weigh the evidence, as is true upon motion for a new trial. *Heiny, Admx.* v. *Pennsylvania R. Co.* (1943), 221 Ind. 367, 47 N. E. 2d 145. Rather, it was the duty of the court under this motion to consider only the evidence favorable to the party against whom the motion was directed and all reasonable inferences deducible therefrom. *Hummel* v. *New York Cent. R. Co.* (1946), 117 Ind. App. 22, 66 N. E. 2d 901; *Fox* v. *Jackson* (1946), 116 Ind. App. 390, 64 N. E. 2d 799; *State ex rel. Bowers* v. *Moser* (1944), 222 Ind. 354, 53 N. E. 2d 893; *Lincoln Nat. Bank & Trust Co.* v. *Parker* (1941), 110 Ind. App. 1, 34 N. E. 2d 190, 37, N. E. 2d 5."

A peremptory instruction should be given only when the evidence is clearly insufficient to establish one or more of the facts essential to the plaintiff's right to a recovery. *Boston* v. *Chesapeake & O. Ry. Co.* (1945), 223 Ind. 425, 428, 61 N. E. 2d 326; *Taylor* v. *Fitzpatrick* (1956), 235 Ind. 238, 132 N. E. 2d 919; see also *Whitaker, Admr.* v. *Borntrager, supra; Hubble* v. *Brown* (1949), 227 Ind. 202, 84 N. E. 2d 891; *Slinkard* v. *Babb, Wilson* (1954), 125 Ind. App. 76, 112 N. E. 2d 876.

The acts of negligence alleged in appellant's amended complaint are as follows:

1. Said defendants' truck driver was operating the same while under the influence of intoxicating liquor.

2. At the time of the accident, appellant's truck driver was on his right side of the center of said highway, when appellees' truck driver suddenly and without warning to appellant's driver swerved appellees' truck to the left of the center of said highway, striking appellant's truck, causing it to become demolished.

Appellant accurately states the facts as shown by the evidence to be as follows:

"About seven miles south of Sterling, Indiana, on U. S. Highway No. 41, the collision occurred about 10:20 o'clock P.M., on the night of June 29, 1949. The appellant's truck was going south on said highway and appellees' truck was going north as they approached a narrow bridge. No living witness saw the collision except appellees' driver. The bridge was about 19 feet wide and the pavement 18 feet wide. There were concrete railings on each side of the bridge, about 3 feet high, extending through the bridge, about 41 feet; there were fresh marks on the railing through the entire length of the bridge where a vehicle had scraped it. These marks were on the west side. There was glass and 'dried dirt' 'laying' in the bridge. The debris started at the north entrance of the bridge and it was scattered halfway through the bridge. The marks on the railing were red and the fenders of appellant's truck were painted red. The highway at the place was rolling and a dip, down into the bridge from both sides, north and south. After the collision appellant's truck traveled 50 to 100 feet south of the bridge and landed in the ditch on the east side; it burst into flames and the driver perished. The 'beer truck' after the collision landed about 250 feet north of the north end of the bridge. About 22 feet north of the bridge were fresh digs or dips in the pavement about where the

center line would be. The left rear tractor wheels of the beer truck were sheared off. The tractor had dual wheels in the rear which extended out farther than the front wheels."

In addition to this as appellant properly states:

"The State trooper stated that after seeing appellees' driver and talking to him he smelled liquor on his breath. His eyes were 'red rimmed' or sort of blood shot. After observing him he, the State trooper, called for a drunkometer to be brought down. He held him until the drunkometer arrived; after the test appellees' driver was taken to Covington and placed in jail. The next morning he pleaded guilty to the charge of 'drunken driving'."

Thus there was evidence from which the jury could have found that the appellees' driver was guilty of negligence in the operation of a motor vehicle while under the influence of intoxicating liquor. *Buddenberg* v. *Morgan* (1942), 110 Ind. App. 609, 618, 38 N. E. 2d 287; *Jones* v. *Cary* (1941), 219 Ind. 268, 37 N. E. 2d 944. Whether there was evidence of actionable negligence depends upon whether such negligence could properly be found, under the evidence here, to be a proximate cause of the collision. This must be determined from the objective physical acts done or omitted by the driver, and his intoxication, if it existed, would be a circumstance reflecting upon the probability as to whether he was at the time doing or omitting to do some act required by the rule of ordinary care. *Buddenberg* v. *Morgan, supra.* The only such act relied upon by appellant in its complaint is that the appellee driver suddenly swerved the vehicle he was driving to the left of the center of the highway striking appellant's trailer.

In the case of *Buddenberg* v. *Morgan* (1941), 110

Ind. App. 609, 38 N. E. 2d 287, at pages 618-619, this court said:

"It is a violation of law in this State to operate a motor vehicle upon the public highways of this State while under the influence of intoxicating liquor. Section 47-517, Burns' 1933. To operate an automobile in violation of a statute is negligence, and such negligence is actionable if it proximately results in injuries to life or property. It is appellant's contention that intoxication alone does not constitute actionable negligence. With this statement, we are in accord; *but when intoxication of the driver coupled with the operation of a motor vehicle is established, wrongful conduct is shown.*" (Our emphasis.)

and at page 628 it is stated:

"It is a well-established rule of law that it is only where the evidence upon any question is undisputed and only one legitimate inference can be drawn therefrom that the court has a right to direct a verdict. If there is any legal evidence whatever, having legal weight, or any legitimate inferences from such evidence tending to support plaintiff's right to recover, the question is one for the jury." (Citing authorities.)

In the case of *Hubble, Admr.* v. *Brown* (1949), 227 Ind. 202, 84 N. E. 2d 891, the Supreme Court, in reversing a case where the trial court had instructed the jury to return a verdict for the appellee, said, at pages 211-212:

"There are few cases where, if attention is allowed to stray from the evidence and the imagination is allowed to run riot, there may not be conflicting theories of how and why any given occurrence happened. But because a jury may guess and speculate outside the evidence, is not grounds for instructing a jury to return a verdict for the defendant when there is evidence from which a reasonable inference may be drawn in favor of the plaintiff."

In the case of *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734, the facts as set out by the court were not nearly as strong as they are in this case. In that case the Supreme Court summarized the pertinent evidence as follows:

"Daryl M. Ford, a state policeman, testified that he was called to investigate the collision about 5:30 P.M., Nov. 3rd, 1949. The streets were not lighted and it was dark. He went to Donnelly's corner. The ambulance was there. There was a pickup truck that had been involved in an accident with a pedestrian. If the body was there it was in the ambulance. He did not question the defendant that night, but did the next day. She said she was going South on 53, and at the intersection or close to it she was meeting a farm tractor at the time of the accident. All at once there was someone in front of her truck and the next thing she knew she struck the object, whatever it was. The policeman told her she had struck Burnie Salyers. When the policeman got to the scene, the pickup truck was there, about 175 feet south of Donnelly's corner on the west side of the road angling—the front end toward the northeast and the rear end toward the southwest. It had run off the highway about 100 feet from the intersection, turned around and headed back. The body was thrown about 100 feet after it left the car. We could see where it rolled on the ground before it came to a stop. There was blood where the body stopped. It stopped about 125 feet south of the intersection on the west side of the road, and 80 feet north and west of the point where the truck came to a stop. The grill and radiator in the center of the front of the truck was damaged. He went to the funeral home and saw the dead body.

"As a witness for the plaintiff, the defendant, Isabelle Borntrager, among other things, testified:

" 'I was driving the truck on the evening in question. It was dark and I had the lights on. I saw the decedent just a matter of seconds before the accident. I saw the man just after I came in contact with him. I did not see what happened to

him when he was hit, but I knew I hit him. I now know he was Burnie Salyers. My car did not turn around immediately after I put the brakes on but did eventually. I did not sound the horn at any time just before hitting him.' "

The court then said:

"When all the known physical conditions and circumstances surrounding an accident are proved as in this case and there are legitimate inferences that naturally flow therefrom that by a fair preponderance might convince reasonable persons that the collision was caused by defendant's negligence as alleged, while other equally reasonable persons might not be so convinced thereby a situation exists for solution by the jury only under proper instructions from the court. Under such conditions it is error to give a peremptory instruction to find for the defendant."

With the foregoing rules as our guide, it seems to us that some reasonable persons could have reasonably inferred that appellees' truck driver, while under the influence of intoxicating liquor, approached the bridge at an excessive speed for a beer-laden tractor-trailer to pass through such a narrow bridge and he failed or was unable to keep his vehicle on the right side of the highway when entering or about to enter the bridge, because the undisputed evidence is that the left rear wheels extended beyond the metal part of the axle and that metal part struck the pavement on the center line, and thereby crowded appellant's driver with his truck over so far as to cause it to scrape the west side of the bridge; that the collision occurred at or on the north end of the bridge, because there was glass and dirt lying on the bridge floor; the left rear wheels of appellees' truck were torn loose and caused some metal parts to dig into the concrete pavement about

22 feet north of the bridge; that appellees' loaded truck did not come to a stop until it had traveled about 250 feet up the dip north of the bridge, its axle dragging on the road. It also could be reasonably inferred that appellees' truck driver exceeded the speed reasonably safe to go through that narrow bridge and crowded the appellant's driver over against the west rail of the bridge, and whether the above facts were the proximate result of his intoxication or not is a question of fact, which should have been left with the jury to decide.

Judgment reversed with instructions to sustain appellant's motion for a new trial on all the issues in this case.

Kelley, C. J., Royse, P. J., Bowen and Cooper, JJ., concur.

Crumpacker, J., dissents.

NOTE.—Reported in 150 N. E. 2d 256.

　　　Transfer denied. Landis, Acting C. J.; Bobbitt, C. J., dissents.