BLUNK *v.* ALLIS-CHALMERS MANUFACTURING CO.

[No. 767A40. Filed December 3, 1968. Rehearing denied December 30, 1968. No Petition to Transfer filed.]

*Robert F. Gammon, Gammon and Gammon,* of Indianapolis, for appellant.

*James V. Donadio, Ralph A. Cohen,* of Indianapolis, *Ice Miller Donadio & Ryan,* of counsel, of Indianapolis, and *Scifres Hollingsworth & Martin,* of counsel, of Lebanon, for appellee.

BIERLY, J.—This is an appeal from the Boone Superior Court of Boone County, Indiana. Plaintiff, Keith Blunk, brought this action against defendant, Allis-Chalmers Manufacturing Company, for personal injuries. Plaintiff was a Morgan County, Indiana, farmer who had lost a leg in an accident involving a corn-picker designed and manufactured by defendant company. An amended complaint was filed alleging therein that the accident occurred because of defendant's negligence in design of the corn-picker. Defendant-appellee, in its answer to the amended complaint, alleged that the plaintiff,

". . . knowingly and voluntarily incurred the risk of the injuries and damages complained of by exposing himself to the hazard of coming into contact with exposed parts of the corn picker when he well knew the risk involved of thus exposing himself to such an open and obvious danger."

Upon the issues thus joined, the cause was tried to a jury. After the plaintiff rested his case in chief, the defendant filed a motion for a directed verdict. This motion was sustained by the court, and this appeal followed.

It appears from the record that at the time of the accident appellant was a farmer in Morgan County, Indiana. It further appears that appellant had been engaged in farm work for a number of years and was familiar with the various types of equipment normal to farmers and farming; that he had seen

and operated various types of corn-pickers and regarded all to be basically the same in design and operation; that he considered corn-pickers in general to be dangerous machines when in operation; that from boyhood he had known it to be a dangerous and hazardous practice for an operator to get off a tractor while the corn-picker was still under power, and this fact was common knowledge of which he was aware at the time of the accident.

Mr. Blunk, appellant, testified he had purchased the used Allis-Chalmers corn-picker about a month prior to the time of the accident; that several days prior to the date of the accident the corn-picker had clogged and jammed with corn-stalks due to bad weather and the unfavorable condition of the crop.

During further testimony Mr. Blunk stated that other farmers in the area were having similar problems, and that he had a similar problem with a corn-picker he had owned previous to the Allis-Chalmers model involved in the accident.

He testified that when the picker clogged, it was necessary to dismount from the tractor to unclog it; that sometimes he left the power on during this operation, and sometimes not, but that he considered it an unsafe practice to leave the power on during this operation, but sometimes he felt it necessary to leave the power on to unclog the equipment.

Appellant stated at the time of the accident causing his injury that he had left the power take-off on and the snapping rollers were revolving. After Mr. Blunk had unclogged the picking device, he chose to attempt to remount the tractor to the driver's seat from the front of the picker by placing his foot on the moist fender over the moving snapping rollers, but in so doing, his foot slipped on the wet metal and into the snapping rollers, and, as a result, appellant suffered serious injury to his foot and leg.

Appellant concedes that his method of mounting the tractor was a dangerous practice especially with the power take-off still on, the snapping rollers moving, and the metal curved snout slick from moisture, yet he contends that the design of the corn-picker made any mode of mounting dangerous. To support his complaint, Mr. Blunk alleges he was given a hard choice between dangerous alternatives and that the defendant company should have foreseen the difficulty of an operator in getting on and off the machine, and should have provided acceptable and safe means of mounting and dismounting from the picker, and of cleaning the machine when it clogged and jammed.

Appellant urges us to not only approve applicable rules governing ordinary negligence but also the rule of strict liability for negligence of the manufacture and design of a product. In support thereof, appellant cites Restatement of Law of Torts 2nd, Sec. 402A. Appellant further cites as authority for applying the rule of strict liability to such cases in Indiana, *Hart v. Goodyear Tire & Rubber Company* (N. D. Ind. 1963), 214 F. Supp. 817, and *Greeno v. Clark Equipment Co.* (N. D. Ind. 1965), 237 F. Supp. 427.

Illinois, in a case similar to the case at bar, in adopting the rule of strict liability, held the designer manufacturer liable in a case when the plaintiff, a farmer, was injured by the defendant's corn-picker when he caught his hand and arm in the shucking rolls because there was no guard over the rollers above which corn ears had to be manually extracted. It was held by the Illinois Court that the plaintiff had good cause of action against the manufacturer of the machine under both theories of negligent design and strict liability in tort; *Harold Wright v. Massey Ferguson, Inc., and Massey-Harris, Inc.* (1966), 68 Ill. App. 2d 70, 215 N. E. 2d 465.

In *Wright v. Ferguson, supra,* the court quoted the above Section 402A Restatement of the Law of Torts 2nd, and held:

"The plaintiff must prove that his injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control."

The court further held:

"The present case involves a claimed defect in design rather than a defect in manufacture and we interpret *Suvada (Suvada v. White Motor Company et al.* [1965] 32 Ill. 2d. 612, 210 N. E. 2d 182) to mean that the *strict liability imposed upon a manufacturer includes injuries which arise from defects in design as well as defects in manufacture*" (Emphasis supplied).

Appellant argues that there is sufficient evidence both direct and that to be inferred, in the case at bar, which would hold the manufacturer liable on the theory of strict liability as follows:

"Appellee:

"1) Failed to provide a proper rear mount, making it difficult to use.

"2) Failed to provide an on-off device controllable from the ground.

"3) Failed to provide adjustable snapping rollers to make it easier to clear.

"4) Failed to design a corn-picker so it could be raised off the ground higher than 3 or 4 inches, making it possible to clear the corn-picker from underneath (impossible with appellant's cornpicker and unlike other pickers).

"5) Designed the machine knowing it would clog and jam without providing any adequate or reasonably safe means to clear it."

Appellant cites *L. S. Ayres & Company v. Hicks* (1942), 220 Ind. 86, 40 N. E. 2d 334, (petition for rehearing denied 41 N. E 2d 195), as holding that the defendant was not negligent or liable for the initial injury but was held liable

for the aggravation of the initial injury. Then the appellant, in the case at bar queried: "Could the jury find defendant-appellee negligent for the plaintiff's aggravation of injury in not providing a control within reach of the plaintiff-appellant?" (Appellant's brief, p. 40). Appellant asserts that the *Hicks* case is applicable to the case at bar, and submits that as a further reason the court should not have directed a verdict in favor of defendant-appellee.

In answer to appellee's charge in its motion for a directed verdict that appellant assumed and incurred the risk and was contributorily negligent, appellant countered by replying that he could not assume the risk as such defense is limited to where there is a contractural relationship between the parties, and cites *Stallings v. Dick* (1965), 139 Ind. App. 118, 210 N. E. 2d 82, 6 Ind. Dec. 291.

Appellee, in its motion for a directed verdict, states that the appellant incurred the risk or was guilty of contributory negligence, and gave in support thereof a quote from a recent decision of our court in the case of *Stallings v. Dick, supra,* wherein Smith, J., at page 86, speaking for our court, held the test for directing a verdict in reference to contributory negligence and incurred risk, to be:

"The prevailing Indiana rule is that contributory negligence is generally a question of fact for the jury to determine where the facts are such as to be subject to more than one reasonable inference. However, where the facts are undisputed and only a single inference can reasonably be drawn therefrom, the question of contributory negligence becomes one of law..."

"The Supreme and Appellate Courts have many times recognized the test for 'negligence as a matter of law' to be that negligence which is so clear and palpable that no verdict could make it otherwise..."

"In applying this test both the Supreme and Appellate Courts have adopted the rule that the voluntary conduct of one exposing himself to dangers which are so obvious, imminent and glaring that no reasonable man exercising

due care for his safety would have hazarded them is negligence as a matter of law . . ."

Further, appellant points out that the defense of contributory negligence was created by the courts and not the legislature and, hence, may be changed by the courts if found wanting. Such a change recently came about in Illinois when the Illinois Appellate Court by direction of their State Supreme Court adopted the rule of *comparative negligence* in the case of *Maki v. Frelk* (1967), 85 Ill. App. 2d 439, 229 N. E. 2d 284, saying (of the defense of contributory negligence),

   ". . . having found the doctrine to be unsound and unjust under present conditions the courts have not only the right, but the duty to abolish the defense."

And,

   ". . . as a matter of justice and public policy, the contributory negligence rule should be changed. . . . Comparative negligence should be adopted. . . ."

It would be fairly concluded that the appellant herein would like to see a similar rule in this jurisdiction rise from this case before us. (We note, however, that the *Maki* case, *supra,* was reversed by the Illinois Supreme Court on July 11, 1968, 239 N. E. 2d 445).

Appellee's answer, briefly stated, is that the appellant by his own testimony has conceded that the hazard of the cornpicker was open, obvious, and known to him and was common to equipment of the type in question. In spite of this, appellant chose a method of mounting the tractor which placed him in special danger and he was subsequently injured having knowingly and voluntarily incurred the risk. Appellee says the theory of strict liability does not apply to this case as no "defective condition unreasonably dangerous to the user" exists with this cornpicker; nor has appellant

shown the machine to have been defective at the time it left the hands of the manufacturer.

Appellee dismisses the comparative negligence argument advanced by appellant as not being the law of Indiana. Further, appellee says, even under the comparative negligence doctrine the appellant could not recover in this case since all of the fault of his injury was his own.

Appellant alleged faulty design of the corn-picker in that it could be elevated only four inches from the ground, thereby rendering it most difficult in removing obstructions causing clogging of the picker. Appellant admitted that due to the condition of the wet soil and inclement weather, the tractor wheels sank a slight distance into the earth as it was being operated.

It appears from the testimony having probative value that the attempt of the appellant to operate the tractor and picker, in spite of the bad weather conditions, the softness of the earth and other unfavorable conditions, was certainly at variance with recommendations of the manufacturer of the corn-picker. A commonsense approach by an operator of the picker would have precluded him from attempting to use it under the weather and soft ground conditions prevailing at the time of the tragic injury to appellant. Here, in the corn belt, it is not unusual to note a loss of fingers, loss of a hand, and a loss of an arm, as well as foot injuries, because the operators took "a chance" to unclog corn-pickers while failing to shut off the power equipment.

In the case of *Strickler v. Sloan, et al., etc.* (1956), 127 Ind. App. 370, 141 N. E. 2d 863, we have facts similar to the case at bar. In that case, a complaint was filed in two paragraphs based on common negligence and liability under the Employers Liability Law. The facts presented in the case involved an appellee, Sloan, who directed the appellant to travel from farm to farm to harvest crops; that because of the alleged negligence of the appellees,

appellant fractured his thumb and two fingers in "open and moving trash rollers" of a mounted Case cornpicker. Demurrers were filed to each of the two paragraphs of the complaint, which were sustained by the court. Plaintiff refused to plead over and an appeal followed. Judge Pfaff, speaking for this court, held that the complaint alleging negligence in manufacturers in failure to install guards on cornpicker is demurrable for insufficient facts, and a remote user of a machine dangerous because of the way it functions to show a cause of action must allege and prove the existence of a latent defect or danger not known to plaintiff or other users. A manufacturer is under no duty to render a machine "more safe" as long as danger to be avoided is obvious and patent to all and in cases dealing with manufacturer's liability, stress is laid upon the duty of guarding against hidden defects and of giving notice of concealed dangers.

Also, in *Strickler, supra,* Judge Pfaff referred to the case of *Chisenall v. Thompson* (1952), 363 Mo. 538, 252 S. W. 2d 335, where the plaintiff received a grave injury in losing his right hand as he attempted to remove some cornstalks from between the revolving rollers of a cornpicker when the plaintiff failed to place the power take-off lever in neutral gear. The court reversed the judgment of the trial court, and said:

> " '. . . the danger resulting from allowing ones hand to come in contact with those rollers was perfectly obvious and it needed no warning to advise the plaintiff, or anyone of ordinary common sense, of such danger.' "

While the *Chisenall, supra,* case is one of foreign jurisdiction, yet we are in full accord with the law as therein stated.

While the granting of motions for directed verdicts are generally looked upon with disfavor by our courts, there are cases when directed verdicts are applicable. In the case of *Bradford v. Chism* (1963), 134 Ind. App. 501, 186 N. E. 2d 432, speaking for the court, Judge Hunter stated:

"This court has held in many cases that a peremptory instruction for a defendant will be upheld only if one or more of the material allegations of the complaint essential to recovery are not supported by evidence of probative value or by any reasonable inference that may be drawn therefrom. *Whitaker, Admr. v. Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734; *Huttinger v. G. C. Murphy Company* (1961), 131 Ind. App. 642, 172 N. E. 2d 74; *Morrow, Inc. v. Munson, et al.* (1958), 129 Ind. App. 113, 150 N. E. 2d 256...."

It was stated by the Appellate Court in *Buddenberg v. Morgan* (1941), 110 Ind. App. 609, 38 N. E. 2d 287, at page 628:

"It is a well-established rule of law that it is only where the evidence upon any question is undisputed and only one legitimate inference can be drawn therefrom that the court has a right to direct a verdict. If there is any legal evidence whatever, having legal weight, or any legitimate inferences from such evidence tending to support plaintiff's right to recover, the question is one for the jury."

In *Garr v. Blissmer et al.* (1961), 132 Ind. App. 635, 177 N. E. 2d 913, the court made this comment:

"In considering error in sustaining a motion for a directed verdict, we accept as true all facts unfavorable to the moving party which the evidence tends to prove and all inferences reasonably deducible therefrom.

We are of the opinion that in line with the law relative to a directed verdict as heretofore set forth, the appellant was contributorily negligent in the case at bar as a matter of law. We think that the evidence is clear, conclusive, and without conflict as to the question of appellant's own contributory negligence, as heretofore set forth and evaluated.

We present an additional case of *Hunsberger v. Wyman* (1966), 247 Ind. 369, 216 N. E. 2d 345, 8 Ind. Dec. 245, relative to a directed verdict for the defendant. At page 348, the court stated:

"In any negligence action, both parties are obligated to exercise ordinary and reasonable care to avoid injury. This includes the duty to observe and appreciate danger or threatened danger. 'A person is required to make reasonable use of his faculties and senses to discover dangers and conditions of danger to which he is or might become exposed.'

\* \* \*

". . . which includes the duty to see and appreciate what can be seen and appreciated and to avoid danger."

While *Hunsberger, supra,* involved an action against an employer for injuries sustained when a truck frame fell on employee while he was working on it under employer's directions, we think the law as set forth by the court in that case is applicable to the injury sustained in the case at bar.

The facts presented in the case at bar disclose that the appellant neither bought the used corn-picker in question from the appellee, Allis Chalmers Company, nor from any duly accredited agent of the appellee. Such a transaction therefore placed an additional burden on the purchaser of the picker and removes him from warranties guaranteed by an original purchaser from the manufacturer's agent or dealer.

After a careful review of this cause, we are of the opinion that appellant was guilty of contributory negligence in his actions leading to his injury, and that he failed to establish reversible error by the court in directing a verdict in favor of appellee.

Judgment affirmed.

Pfaff and Smith, JJ., concur.

Judge Cook, P.J., passed away November 21, 1968.

NOTE.—Reported in 242 N. E. 2d 122.