WYNER v. ELLIS.

[No. 20,047. Filed March 3, 1965.]

*Edward W. Hardig, Feeney & Startigos* and *Richard D. Doyle,* Deputy Prosecuting Attorney, 60th Judicial Circuit, all of South Bend, for appellant.

*Edward B. Smith,* of South Bend, for appellee.

PRIME, J.—This is an appeal from a judgment for the defendant (appellee herein) in an action commenced by appellant against appellee alleging that the appellee was the father of her child born in January, 1963, and that appellee refused to assume the obligations of the father.

The issue to be decided by the trial court was whether or not the appellee was the father of the illegitimate child born to the appellant on January 19, 1963.

The issues were formed by the filing of an affidavit by the appellant in the St. Joseph Probate Court in Paternity Cause No. 5034 on December 19, 1962. The affidavit, omitting caption and signatures, was as follows:

> "Marilyn J. Wyner, being first duly sworn upon her oath, deposes and says:
>
> "That she is the petitioner herein; that the said petitioner is an adult female, age 26 years; that said petitioner is a resident of Cook County, State of Illinois, and that she will give birth to an illegitimate child in January, 1963.
>
> "That the defendant, Joseph Newlin Ellis, is the father of said unborn child, and that the defendant, Joseph Newlin Ellis, refused to assume the obligations of a father.
>
> "Wherefore, petitioner prays the court that the defendant, Joseph Newlin Ellis, be declared to be the father of said unborn child and be ordered to assume the obligations of a father."

There was no answer filed to said affidavit by the defendant.

The cause proceeded to trial by the court and on May 24, 1963, the following judgment was entered:

> "Come now the plaintiff and Richard Doyle, Deputy Prosecuting Attorney. Come also the defendant and his attorney, Edward B. Smith.
>
> "And now Affidavit to Establish Paternity is submitted to the court for trial, finding and judgment without the intervention of a jury. And now evidence of the plaintiff is begun.
>
> "And now the plaintiff rests.
>
> "And now the defendant orally moves the court for judgment, which motion the court now sustains and finds for the defendant and against the plaintiff. Judgment.
>
> "IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED, by the

court that the plaintiff, Marilyn J. Wyner, take nothing by reason of this action, and that the plaintiff, Marilyn J. Wyner, pay the costs of this action herein laid out and expended, taxed at $————.

"And now the court further orders the bond heretofore filed herein by the defendant and surety thereon be, and the same is hereby released and discharged."

On May 29, 1963, the appellant by counsel, filed her motion for a new trial. Said motion for new trial was overruled on June 7, 1963.

Subsequently on August 20, 1963, the appellant moved to correct the motion for new trial which the court granted and the motion for new trial was duly corrected. This correction consisted of adding the word "not" in the sentence which previously read: "1. That the decision of the court is sustained by sufficient evidence." When corrected the motion read as follows:

"1. That the decision of the court is *not* sustained by sufficient evidence.

"2. That the decision is contrary to law."

The causes assigned and discussed in appellant's brief are:

(1) Error of the trial court in sustaining the motion of appellee.

(2) The decision is contrary to law.

The record consists of the testimony of but one witness. This was the appellant herself. Her testimony in brief, was as follows:

My name is Marilyn J. Wyner, and I, at this time, reside in Los Angeles, California, I am the same Marilyn J. Wyner who signed an affidavit to establish paternity against Joseph Newlin Ellis on December 15, 1962. This is the same Joseph Newlin Ellis, who I am pointing out in the court room

today. I gave birth to an illegitimate child on January 19, 1963, and that child is a baby girl and is now living in Los Angeles, California, with my mother and father.

I first had sexual intercourse with Joseph Ellis in mid-March of 1962. We had discussed marriage and he had professed love for me throughout the whole courtship, before any physical relationship was encountered.

Later in March, Joseph Ellis came to pick me up in Chicago and we drove to Gary, Indiana, and to the American Motel there, where we had sexual intercourse. We had sexual intercourse possibly twice in March of 1962. In April of 1962, I continued to see Joseph Ellis quite frequently, perhaps three or four times a week. I saw him each time in Gary, Indiana, and sometimes he would come up to Chicago to pick me up and other times I would take the train as far as Gary or Hammond and meet him and we would go to Gary. We would spend the night either at the American Motel or the Gary Hotel. We had sexual intercourse on each of these occasions.

This continued throughout the month of April. I first noticed I was pregnant in May of 1962 and I told Joseph Ellis about it. He said that he was going to have to put more pressure on his wife, Barbara, about the divorce. We continued to meet throughout the month of May about three or four times a week.

I went to a doctor in May and he confirmed my suspicion of being pregnant. He said the baby would be due in January, 1963. I continued to meet Joseph Ellis on various occasions after this and he would come up to my apartment.

I continued to see Joseph Ellis throughout June and up to a week before the baby was born in January of 1963. I did not have any sexual intercourse with any other man in March, April or May of 1962.

We had an argument on October 12, 1962, when he said he couldn't get a divorce and he wanted me to put the child out for adoption and this I would not consent to do.

The last time I saw Joseph Ellis was on January 10, 1963, before the birth of the baby on January 19, 1963. At that time he still hoped that I would turn the baby out for adoption. We didn't talk about his paying the hospital or medical bills because he was very upset and bitter about my having taken action against him when I signed the affidavit to determine paternity in December, 1962.

I had to pay the hospital and doctor bills. After I returned home from the hospital, Joseph Ellis called me and that he was very aggravated that I did not turn the child out for adoption and that maybe we could get together and discuss the future. At the end of February, I gave up my apartment and moved in with an aunt in Skokie, Illinois. I stayed with her for ten (10) days and then went to California to be with my child, whom my mother had taken out a few days earlier. My mother had been living with me since late December, 1962, until the end of February, 1963.

At the conclusion of the testimony above and after cross-examination, the defendant orally moved the court for judgment which was sustained.

An assignment that a negative judgment is not sustained by sufficient evidence presents no question for our consideration. Under the assignment, however, that the decision is contrary to law we must consider whether or not the evidence plus all reasonable inferences to be deduced therefrom would lead to a conclusion contrary to that of the trial court.

The rule as enunciated by our courts is that a motion for a judgment at the conclusion of plaintiff's evidence or at the conclusion of all of the evidence is the same as a demurrer to the evidence and is to be tested by the same rules of law as a request for a peremptory instruction to a jury. Such a motion pre-

sents the question as to whether or not the evidence introduced on behalf of appellant, assuming it to be true, and considering as proved all which the evidence proves, or by legitimate inference tends to prove, establishes the appellant's case as laid. *Abernathy* v. *McCoy* (1930), 91 Ind. App. 574, 154 N. E. 682; *Smith* v. *Switzer* (1933), 205 Ind. 404, 186 N. E. 764; *Spanier* v. *Spanier* (1951), 120 Ind. App. 700, 96 N. E. 2d 346.

In *Watson* v. *Bagaloff et al., etc.* (1956), 127 Ind. App. 99, 108, 135 N. E. 2d 736, it was stated by this court:

> "The trial court was therefore bound to accept as true all of the facts which the evidence tended to prove in support of appellant's claim together with all reasonable inferences to be drawn therefrom in favor of appellant and the trial court could only consider the evidence and agreed statements of facts as shown in the record construed most favorable to the appellant, and anything going beyond the same in the court's findings of fact and conclusions of law was *coram non judice.*"

It seems clear that the court did not accept as true, all the facts which the evidence tended to prove, nor did the court draw against the moving party, the appellee, all reasonable inferences which a jury might have drawn.

In the instant case the motion for judgment was made at the conclusion of direct testimony by the appellant. This was a test of whether the adverse party's production of evidence was sufficient to establish her position. We believe there was a strong array of evidence submitted by the appellant which was never refuted or even challenged. *Tabor* v. *Continental Baking Company* (1942), 110 Ind. App. 633,

38 N. E. 2d 257; Volume 2, Gavit, *Indiana Pleading & Practice*, Section 365, pp. 2177-2178.

The following language was used by the court in granting the motion for judgment:

> "there is no point in arguing with me. I am going to find against her on the grounds she was keeping company with other men and she was keeping company with this man when she knew he was married."

In our opinion this was not only intemperate language, but showed complete disregard for the evidence before the court.

We therefore determine that the court erred as a matter of law in its ruling on the motion for a directed judgment and in overruling appellant's motion for a new trial.

We reverse the lower court herein and instruct the court to sustain appellant's motion for a new trial.

Judgment reversed.

Faulconer, C. J., Carson and Martin, JJ., concur.

NOTE.—Reported in 204 N. E. 2d 662.