INDIANAPOLIS SAENGER CHOR, INC. *v.* AMERICAN FLETCHER NATIONAL BANK ET AL.

[No. 371A43. Filed November 4, 1971.]

*George L. Diven, Vaeger & Tinder,* of Indianapolis, for appellant.

*John M. Ryan,* of Indianapolis, for appellee, American Fletcher Bank and Trust Company, *Alex M. Clark, Clark & Clark,* of Indianapolis, for appellees, Graber and Kinder.

LOWDERMILK, J.—This is an action brought by plaintiff-appellant against defendants-appellees, charging defendant-appellee American Fletcher National Bank with wrongfully paying out a savings account to Fred Graber and Robert Kinder, who were members of the plaintiff-appellant corporation, without authority to do so, and for dishonoring a check, and charging appellees Graber and Kinder with conversion of $1,954.10 of plaintiff-appellant's money to their own use.

The complaint is in three Paragraphs, and alleges that Graber and Kinder were members of the plaintiff-corporation and that prior to March 26, 1968, Graber was chairman of the "House Committee" of the plaintiff-appellant, said House Committee being a part of the management procedure of the

plaintiff-appellant and appellee Kinder was a member of said House Committee.

On March 26, 1968, Graber resigned from the House Committee.

That during the year 1968 plaintiff was the owner of two accounts on deposit with the defendant American Fletcher National Bank, one account being listed as "Indianapolis Saenger Chor, Inc." and the other being listed as "House Fund, Saenger Chor".

That subsequent to March 26, 1968 and prior to May 8, 1968, plaintiff-appellant executed to American Fletcher National Bank an authorization for endorsing and signing checks, withdrawals and deposits of funds of House Fund, Saenger Chor, designating Otto Zehner or Frederick Renholzberger as the persons so authorized on behalf of plaintiff.

That on September 16, 1968, plaintiff executed a check in the amount of $1,700 payable to Ben J. Edwards, which was duly signed by Otto Zehner in his authorized capacity, which check was drawn on the House Fund, Saenger Chor account, No. 24-2853-0, and at the time said check was presented to defendant bank said House Fund had a balance of $1,954.10.

That the bank, without the knowledge or consent of plaintiff, refused to pay said sum from the House Fund, Saenger Chor, and altered and paid said check from Indianapolis Saenger Chor, Inc. account.

Plaintiff further charges that on October 4, 1968, without the knowledge or consent of the plaintiff, defendant bank fraudulently and with intent to defraud the plaintiff, violated its duty to protect the depositor, and permitted Graber and Kinder to withdraw the sum of $1,954.10 from the account designated House Fund, Saenger Chor, in said bank, which fact was not known until plaintiff received its cancelled checks and statement on October 9, 1968, after which the bank was immediately notified of the errors in their actions.

Plaintiff further charges Graber and Kinder with taking control and holding plaintiff's money in the amount of $1,954.10; that demand has been made and plaintiff has been refused and deprived of the money.

The second Paragraph of complaint charges that in October, 1968, plaintiff had on deposit $1,954.10 in an account which was titled House Fund, Saenger Chor; that on or about October 4, 1968, defendants Graber and Kinder converted said money to their own use as the result of which plaintiff sustained damages.

Paragraph III reiterates the allegation of the deposit and further states that on September 6, 1968, plaintiff drew its check on said account in the amount of $1,700 payable to Ben J. Edwards, who endorsed and presented it to the bank for payment. That the defendant bank dishonored said check and refused to pay the same from House Fund, Saenger Chor account. Said check was paid from the account of Indianapolis Saenger Chor, Inc., without authorization, all to plaintiff's damage.

Defendants Graber and Kinder filed their answer admitting that American Fletcher National Bank was an Indiana corporation, engaged in the banking business and denied each and every other rhetorical paragraph of the allegations of all three Paragraphs of plaintiff's complaint.

Defendant bank filed answer in four Paragraphs. In the first Legal Paragraph, in the first rhetorical paragraph thereof, the bank admitted it was a banking institution and the rest amounted to a denial of each and every rhetorical paragraph of the first Legal Paragraph of complaint, and also of each rhetorical paragraph of the second and third Legal Paragraphs of complaint.

Paragraph IV of defendant bank's answer was in the affirmative and alleged that defendant (sic) opened an unincorporated account entitled House Fund, Indianapolis Saenger Chor, showing Robert Kinder, Secretary, Fred Graber, Presi-

dent. The resolution provided that either of the above named could withdraw any and all money in said account, which was opened in December, 1966. It further alleged that on or about May 8, 1968, another purported resolution was submitted to the East Street Branch of defendant, but charged that the new resolution failed to adhere to the resolution of December, 1966. The resolution of December, 1966, provided that American Fletcher National Bank and Trust Company was authorized to permit withdrawals to Fred Graber and Robert Kinder, only; that until written notice of modification or repeal of said resolution be delivered to said bank that the permission to withdraw any and all deposits in said account will be only to the above named Graber and Kinder; that the purported new resolution of May, 1968, did not include any modification or repeal of the resolution of December, 1966.

The record discloses that there was no reply filed to the bank's fourth Paragraph of Answer.

Trial was to the court without a jury and at the close of plaintiff's evidence defendant-appellee bank moved for a finding in its favor, after which appellees Graber and Kinder likewise moved for a finding in their favor at the close of plaintiff's evidence. The trial judge, immediately, without hearing argument thereon, sustained each of said motions and granted defendants-appellees judgment herein with costs against plaintiff. (There was no request by any of the parties to argue either of these motions.)

Plaintiff-appellant timely filed its motion to correct errors, which reads as follows, to-wit:

"COMES NOW the above named plaintiff and moves that the Court correct errors occurring at the trial of this cause as follows:

"1.   Error of the Court in sustaining defendants' motion for finding in favor of defendants at close of plaintiff's evidence.

"Said ruling of the Court is in error for the following reasons:

"A.  Contrary to the evidence of record in the case, which evidence proved a prima facia case on behalf of plaintiff;

"B.  Contrary to law in that it ignored the law of procedure and evidence before the Court;

"C.  Contrary to law in that it is in conflict with established decisions of Courts of Appellate jurisdiction.

"2.  Plaintiff was denied a fair trial by an abuse of Court's discretion in that, as shown by comment of the Court, consideration was given to matters not in evidence; and a complete failure to consider evidence before the Court.

"3.  The decision of the Court is contrary to law for each of the reasons above set forth.

"4.  The decision of the Court is contrary to the evidence of record in that plaintiff proved a prima facie case."

This was followed by a memorandum of four pages on the evidence and on the law, which will not be copied herein because of its length.

The motion to correct errors was overruled.

The facts of this cause as shown by the evidence are:

The Indianapolis Saenger Chor, Inc. had two checking accounts with American Fletcher National Bank and Trust Company; one in the corporate name, the other in the name of House Fund, Indianapolis Saenger Chor.

The House Fund received receipts from the bar, pool tables, and other club functions. The House Fund was the account of the House Committee, which was responsible for running the bar and other activities of the club. Such Committee was required to make reports of its activities to membership and officer meetings, and did so.

During 1967 and until March 26, 1968, defendant Fred Graber was a Director of Saenger Chor, Inc., and Chairman of the House Committee, and Robert Kinder was a member

of the organization and was Secretary of the House Committee.

The corporation adopted a resolution which was filed with the bank, certifying that they had authorized Fred Graber, President and Robert Kinder, Secretary, at a meeting of the membership (Board of Directors, Trustees) of the organization known as House Fund, Indianapolis Saenger Chor, on the 22nd day of November, 1966, to maintain a deposit account in the name of the organization with said American Fletcher National Bank and to endorse for deposit to said account checks and payments to the organization and deposit sums therein and authorized said bank to permit withdrawals from said account on checks signed in the name of the organization by the officers listed below, including checks drawn to the individual order of any of said officers signing. This authorization was effective until written notice of modification or repeal of the resolution to the American Fletcher National Bank. This authorization was accepted by the bank and placed on file on December 2, 1966.

On March 26, 1968, Graber resigned his position as Chairman of the House Committee by letter personally handed the corporation in an official meeting.

On April 30, 1968, Indianapolis Saenger Chor, Inc., caused American Fletcher National Bank to be given an authorization form which made Otto Zehner or Frederick Renholzberger the only authorized agents of Indianapolis Saenger Chor to draw on House Fund, Saenger Chor account.

The authorization of April 30, 1968, was to replace one dated November 22, 1966, which authorized Graber and Kinder to draw on the House Fund account.

The replacement of Graber and Kinder authorized Otto Zehner, Vice President, and Frederick Renholzberger, President, to handle all the funds and draw on the House Fund, Indianapolis Saenger Chor and was delivered to the manager of the East Street Branch of said bank, a Mr. Bachmeyer,

by the wife of Frederick Renholzberger, who was an employee of the defendant bank.

This authorization of signatures was received and accepted by the bank on May 1, 1968, and is in the words and figures as follows, to-wit:

PLAINTIFF'S EXHIBIT NUMBER TWO

RESOLUTION AUTHORIZING MAINTENANCE OF A DEPOSIT ACCOUNT
FOR UNINCORPORATED ORGANIZATION
(LODGE, ASSOCIATION)

The undersigned hereby certify that at a meeting of the membership (Board of Directors, Trustee) of the organization known as _Indianapolis Spencer - Chor - Inc., 521 E. 13th Street, Indianapolis, Indiana 46201_ duly held on the _20th_ day of _April_, 19_68_, the following resolution was adopted as shown by record in its minute book:

"RESOLVED, that until written notice of modification or repeal of this resolution shall be delivered to American Fletcher National Bank and Trust Company, of Indianapolis, Indiana, the following officers of this organization are hereby authorized and directed to maintain a deposit account in the name of this organization with said American Fletcher National Bank and Trust Company, and to endorse for deposit on such account checks and drafts payable to this organization, and deposit funds therein; and said bank is authorized to permit withdrawals from said account upon checks signed in the name of this organization by the officers listed below, including checks drawn to the individual order of any said officers signing:

| NAME | TITLE |
|------|-------|
| OTTO ZEHNER | VICE - PRESIDENT |
| FRIEDRICH RENHOLZBERGER | PRESIDENT |

(Designate only those officers authorized to sign. Indicate below whether any one, any two, or all jointly or individually, are authorized to sign.)

Number of signatures required: _1 (One)_.

We also certify that the above named officers were duly elected and are now serving as such for said organization and that the signatures on the accompanying signature card are the genuine signatures of the officers above named.

Dated this _1st_ day of _May_, 19_68_.

PLTF. EXH. _Two_
DEFT. EXH. _____
CAUSE NO. _S669 - 125_
LAURA A. TRAYLOR, OFFICIAL REPORTER
MARION SUPERIOR COURT, Rm. 6

ATTEST:
_Friedrich Renholzberger_
President

_Indianapolis Spencer-Chor, Inc._
(Name of Organization)

By _____
Secretary

X711A

It must be noted that this resolution was on the same form as the resolution adopted November 22, 1966 and received December 2, 1966 by the bank for Graber and Kinder and is on the same form as defendant American Fletcher National Bank's Exhibit "A", which is a resolution dated October 3, 1968, authorizing Fred Graber and Robert G. Kinder to deposit funds and draw on the House Fund, Indianapolis Saenger Chor, and executed by Robert G. Kinder, Secretary and Fred Graber, President, on October 3, 1968. The authorization of October 3, 1968, was tendered and received after Graber had tendered his written resignation to the Indianapolis Saenger Chor on March 26, 1968, to become effective that date.

American Fletcher National Bank honored a check signed by Zehner in the amount of $400.00 and dated May 28, 1968, on the House Fund, Indianapolis Saenger Chor.

According to the first authorization form Indianapolis Saenger Chor was supposed to furnish the bank with a resolution revoking the first authorization when it submitted the second. It did not furnish the bank with a resolution revoking the first authorization.

On September 6, 1968, another check for $1,700.00, drawn on the House Fund, Saenger Chor, signed by Otto Zehner, was paid out of Indianapolis Saenger Chor, Inc. account; Otto Zehner, Vice President, was duly authorized and acknowledged by the bank to draw on the Indianapolis Saenger Chor, Inc. account.

On May 8, 1968, there was a $400 withdrawal made by Mr. Otto Zehner, who was the one who was authorized in the second resolution, dated April 30, 1968, to draw on the account, leaving a balance of $1,954.10 in the account. On September 6, 1968, a $1,700 withdrawal, signed by Otto Zehner, was paid, and later re-credited to the House Fund account by the bank, and was then charged to the Indianapolis Saenger Chor, Inc. account. The charge back from the cor-

poration account to the House Fund, Indianapolis Saenger Chor account, left a balance of $1,954.10 in the House Fund account.

No resolution revoking the second authorization dated April 30, 1968, was submitted to American Fletcher National Bank. Nevertheless, on October 3, 1968, defendants Graber and Kinder submitted yet a third authorization designating themselves as authorized to draw on House Fund, Indianapolis Saenger Chor.

On October 3, 1968, Graber and Kinder transferred all funds out of House Fund, Indianapolis Saenger Chor, and put them into a House Fund, Indianapolis Saenger Chor savings account. Subsequently, on the same day, all funds from the savings account were withdrawn, which withdrawal payment was made by cashier's check, payable to Graber and Kinder and not payable to the House Fund, Indianapolis Saenger Chor, or the Indianapolis Saenger Chor, Inc.

Plaintiff-appellant's motion to correct errors set out that the decision and judgment of the court is contrary to law in specification 1 and three subsections thereunder, and in specification 3, which we shall group and so treat the specifications. Specification 2, that plaintiff was denied a fair trial by abuse of the court's discretion, and specification 4, that the decision of the court is contrary to the evidence in the record in that plaintiff proved a prima facie case, will be treated separately.

The plaintiff-appellant contends that the defendants-appellees Graber and Kinder were guilty of acts of conversion and are answerable to the plaintiff for the $1,954.10 which they withdrew by way of cashier's check.

Indiana Law Encyclopedia, Vol. 6, page 341, defines conversion as follows:

"Conversion, as a tort, consists either in appropriating the personalty of another to one's own use; or destroying it; or exercising dominion over it in defiance of the rights of

the owner or lawful possessor; or withholding it from the owner's possession under a claim of title inconsistent with the owner's claim. Wrongful intent is not an essential element of conversion, and the question of good faith is not involved. *The essence of every conversion is the wrongful invasion of another's property rights,* not the intent with which the wrongful invasion is carried out." (Our emphasis.)

The plaintiff-appellant further argues that the appellee bank had the second and new authorization on the House Fund account from plaintiff-appellant, designating Otto Zehner and/or Frederick Renholzberger, President, as the persons authorized to sign the checks and make the deposits and that the bank recognized this authority and authorized the withdrawal of $400 on a check signed by Zehner. That the bank, on September 6, 1968, cashed a check signed by Zehner for $1,700 and later the $1,700 was credited back to the House Fund account and charged to the Indianapolis Saenger Chor, Inc., account held in the bank.

The evidence discloses that prior to the transfer of the $1,700 back to the House Fund, Indianapolis Saenger Chor account there was a balance in the account of $254.10, which, together with the return of the $1,700, made a total of $1,954.10.

The resolution of October 3, 1968, filed by Kinder and Graber was a duplicate of the authorization dated November 22, 1966, and received by the bank on December 2, 1966. By authority of the October 3, 1968 resolution the transfer was made of the House Fund, Indianapolis Saenger Chor checking account to a savings account and the savings account had all of the corporation's money which Graber and Kinder received by cashier's check in their individual and not in their fiduciary capacity and which they personally retained as their own property.[1]

---

1. The House Fund, Indianapolis Saenger Chor authorization to the bank for withdrawals expressly authorized the bank to permit withdrawals from the account upon checks signed in the name of the

Plaintiff-appellant contends further that the authorization of October 3, 1968, was self-serving, was received by the bank on October 4, 1968, the day after the account was closed on October 3, 1968, which was five months after the bank had received the change of authorization from plaintiff-appellant and in whose name the account was of record.

The bank sets forth the argument that its operational policy in regard to changes in authorizations for making deposits and withdrawals, which policy is expressly stated on the resolution itself, resolutions may be changed only by written notice by act of the Board of Directors who originally authorized the account. They admit that on May 1, 1968, a resolution signed by Zehner and Renholzberger was submitted to the bank by Mrs. Renholzberger, which resolution, they contend, purportedly attempted to change the persons authorized to draw against the House Fund, Indianapolis Saenger Chor account. They further argue that a withdrawal by Mr. Zehner in the amount of $400 was mistakenly drawn from the House Fund account and that the bank at no time felt it should honor the second resolution because it did not correctly revoke the first. The bank further uses the same excuse for honoring the $1,700 check of September 6, 1968, drawn on the House Fund account and this withdrawal was recredited to the House Fund account by drawing against the Indianapolis Saenger Chor, Inc. account, the account which they contend Mr. Zehner was properly authorized to draw against.

Appellee bank admits Graber and Kinder made the transfer of the funds to the house account and then changed the house account to a savings account, which was closed upon

organization by the officers listed below, including checks drawn to the individual order of any of said officer signing. Thus, under the purported resolution of October 3, 1968, executed by Robert G. Kinder, Secretary and attested by Fred Graber, President, would have authorized the bank to have made payment to them direct in their individual capacity, even though they had not been designated in the body of the authorization as the party who could withdraw from the funds in the account held in the defendant-bank.

request and a cashier's check to Mr. Graber and Mr. Kinder was issued to them under the bank's contention that they were the persons authorized to withdraw from said savings account or the House Fund account.

Although the bank had pleaded in its fourth and affirmative Paragraph of Answer that by resolution of December, 1966, Graber and Kinder had authority to withdraw all funds of the corporation until the bank received a rescission of that authority; there was the resolution of April 30, 1968, showing a change of officers and designating new persons to have authority to do the banking. Actually, there was no written rescission of Kinder's and Graber's right to act for the corporation except by inference, which the bank should have recognized upon being furnished the April 30, 1968, resolution. The bank did nothing about this to determine the effect on the status of parties authorized to make withdrawals and to determine if Graber's and Kinder's authority had been revoked.

Graber and Kinder knew their authority had been revoked, as evidenced by the purported resolution of October 3, 1968, authorizing them as President and Secretary to handle the club's funds. Their coming into the bank with a resolution dated on the day of their transacting the business and its being a duplicate of the original resolution and the record having been on file as of May 1, 1968, naming new officers with authority to withdraw funds was, in our opinion, adequate to put the bank on notice of irregularity in the corporation's business with them and they should have made inquiry and determined factually from the corporation who had authority to make deposits and withdraw funds before permitting Kinder and Graber to take all of the club's funds from the bank by cashier's check made to them personally.

Appellee bank contends that Mr. Bahne, plaintiff's first witness, and an employee of the appellee bank, and Mr. Kurth, Treasurer of Saenger Chor, Inc., denied that any such altera-

tion, conversion or wrongful dishonor of plaintiff's checks had taken place.

With that we cannot agree.

Mr. Bahne was asked the following questions, to which he gave the following answers:

"Q. Subsequent to May of 1968, do your records show that there was any change in that account or withdrawal of it?

"A. Yes
     * * *

"A. . . . that the bank received. There was a $400.00 withdrawal made on May 8th, 1968 by Mr. Otto Zehner, who was one that was authorized in the second resolution, in your Number Two. Then, at a later date—that left a balance of $1954.10 in the account.
     * * *

"A. There was, on September the 6th of 1968, a $1700.00 withdrawal also signed by Mr. Otto Zehner. Do you want me to stop at that point or?

"Q. No—well, I'll—was the $1700.00 withdrawal later changed and recredited by the bank to the House Fund account?

"A. Yes, sir.

"Q. And it was, then, charged to the Indianapolis Saenger Chor . . .

"A. Right.

"Q. . . . Inc. account.

"A. That's where it was originally placed in.

"Q. And was there any change in that account made after that date?
     * * *

MR. DIVEN: As I understand it, that $1700.00 was drawn by Indianapolis Saenger Chor on this authorization which they said they later counted, then, the bank did change their record on that and charge that $17.00 (sic) over to Indianapolis Saenger Chor, Inc. and credited it back to this House Fund account.

THE COURT: In other words, put it back in the House Fund.

MR. DIVEN: Yes.

"A. That was September the 8th.

"Q. After September 8—I probably have a pending question, so, strike it out. Uh, after September 8th, 1968, did Mr. Kinder or Mr. Graber take any action concerning the House Fund account?

"A. Us, yes. Now, we're speaking after it was placed back into the House Fund account?

"Q. Yes, that's right.

"A. Yes, they, they took it out of the checking account and transferred it into a savings account.

"Q. With the bank.

"A. With the bank, with AFNB, yes, sir.

"Q. And is that savings account still in possession of the bank?

"A. It's closed.

"Q. And when was it closed?

"A. On, uh, it looks like October the 3rd, 1968.

"Q. Do you know who made that withdrawal of funds closing the account?

"A. That was a bookkeeper's charge. That was a bookkeeper's charge, the bank did it, which we sometimes do at the request of the owner of the account as long as the name of the account doesn't change. In other words, it was transferred from a checking account, House Fund, into the savings account, House Fund, uh, no change of officers.

"Q. Well now, but the savings account, House Fund, was closed on your records.

"A. That's right.

"Q. Was the money actually withdrawn from the bank?

"A. Yes, it was withdrawn and, as I recall, a Cashier's Check issued.

"Q. A what?

"A. As I recall, a Cashier's Check was issued.

"Q. And it was not redeposited in any other name in the bank that you know of.

"A. That's right.

"Q. Would that have required the signature of, uh, one of the authorized persons on that account?

"A. Yes.

"Q.   Then, as far as your records show, one of the signators on this account did withdraw the entire funds.

"A.   Right, yes, sir.

"Q.   And you don't know where it was deposited or if it was, after that?

"A.   No, sir."

Mr. Bahne further testified that the resolution of November 22, 1966, could be changed by the Board of Directors who originally authorized the House Fund to be formed within the organization; that it is not normally done as defendant's exhibit 2, just submitting a new resolution with new names on it.

Witness Bahne was asked the following questions to which he gave the following answers:

"Q.   Now, you've talked with, uh, Mr. Diven asked you about a transfer of this House Fund account. Do you have, in front of you, a resolution submitted by Mr. Graber and Kinder, showing resolution authority to change this money, $1954.10, from the checking account to a savings account at the College Street bank?

"A.   Yes.

"Q.   I hand you what has been marked for identification as Defendant AFNBs Exhibit "A", and could you tell the Court what this is?

"A.   This is a resolution authorizing maintenance of a deposit account for an unincorporated organization, lodge or association into a savings account with American Fletcher National Bank and Trust Company, signed by Robert G. Kinder, Secretary, and Fred Graber, President.

"Q.   Now, this is the instrument I was talking about that authorized Mr. Graber and Kinder to transfer the House Fund from the checking account to a savings account at the College Street branch, is that right?

"A.   That's right.
         *    *    *

"Q.   When you said it was authorized, you were not going into the authority other than as it effected your records in the bank.

"A. Correct, we were using our, we were using our authorization, right."

\* \* \*

Defendant's Exhibit A, the same being the October 3, 1968, resolution is in the words and figures as follows, to-wit:

DEFENDANT AFNB'S EXHIBIT "A"

### RESOLUTION AUTHORIZING MAINTENANCE OF A DEPOSIT ACCOUNT FOR UNINCORPORATED ORGANIZATION
(LODGE, ASSOCIATION)    SAVINGS, # 72-022667-9

The undersigned hereby certify that at a meeting of the membership (Board of Directors, Trustee) of the organization known as ___House Fund- Indianapolis Saenger Chor___

duly held on the ___3rd___ day of ___October___, 19__68__, the following resolution was adopted as shown by record in its minute book:

"RESOLVED, that until written notice of modification or repeal of this resolution shall be delivered to American Fletcher National Bank and Trust Company, of Indianapolis, Indiana, the following officers of this organization are hereby authorized and directed to maintain a deposit account in the name of this organization with said American Fletcher National Bank and Trust Company, and to endorse for deposit on such account checks and drafts payable to this organization, and deposit funds therein; and said bank is authorized to permit withdrawals from said account upon checks signed in the name of this organization by the officers listed below, including checks drawn to the individual order of any said officers signing:

| NAME | TITLE |
|------|-------|
| Fred Graber | President |
| Robert G. Kinder | Secretary |
| | |
| | |

(Designate only those officers authorized to sign. Indicate below whether any one, any two, or all jointly or individually, are authorized to sign.)

Number of signatures required: ___any one___"

We also certify that the above named officers were duly elected and are now serving as such for said organization and that the signatures on the accompanying signature card are the genuine signatures of the officers above named.

Dated this ___3rd___ day of ___October___, 19__68__.

AFNB    PLTF. EXH. ___(A)___
DEFT. EXH. ___5669-125___
CAUSE NO. ___5669-125___
LAURA A. TRAYLOR, OFFICIAL REPORTER
ATTEST:    MARION SUPERIOR COURT, RM. 6

House Fund- Indianapolis, Saenger Chor
(Name of Organization)

By ___Robert G. Kinder___
Secretary

___Fred Graber___
President

MAR 3 1971

DATE    OCT 7, '68
AUTHORIZATION OF SIGNATURES VERIFIED
AND PLACED ON FILE BY ___

1011A

On cross examination of witness Bahne by attorney Bobber-schmidt for the appellee bank, the witness denied the bank ever converted any of the money involved in any of the actions to its own use. He further denied that the bank, to his knowledge, ever dishonored any check involved in this matter, and particularly the $1,700 check they did not dishonor. The witness was asked the following questions by the bank's attorney, to which he gave the following answers:

"Q. *Plaintiff's Exhibit Number Two shows some altera-tion on it. Uh, did this come about after the resolu-tion, or the purported resolution came downtown and the bank was aware of the fact that there was a prior resolution which had not been properly modified or repelled?* [sic]

"A. *I would say yes. Uh, it would have had to have been.* MR. BOBBERSCHMIDT: I believe that's all." (Our emphasis.)

Mr. Kenneth G. Kurth testified that he was Treasurer of the appellant corporation, that he was familiar with its books, and prior to 1967 there were established and in effect outside the Indianapolis Saenger Chor, Inc., committees and sub-committees to perform certain duties for the club. That Fritz Graber was Chairman of the House Committee and also an officer of the club. He further testified that at the start of 1968, Otto Zehner had been elected House Committee Chair-man after Mr. Graber had tendered his resignation from the House Committee to the club.

Mr. Kurth further testified that his Treasurer's report showed $3,000, and they needed approximately $1,700 to paint the building.

Appellee bank cites *International Shoe* v. *Federal Trade Commission* (1929), 280 U.S. 291, 299, wherein the United States Supreme Court held that where there is no contra-dictory testimony and no reason appears for doubting the accuracy of observation or credibility of the witnesses, their statements should be accepted as true. They further cite the

case of *Twin City Realty Corporation* v. *Clay Utilities, Inc.*
(1970), 146 Ind. App. 629, 257 N. E. 2d 686, 695, and we
quote from that case as being the law in Indiana as follows:

"There being no dispute over the facts in the case before
us, such uncontroverted evidence must be accepted as true.
*Abel* v. *Love* (1923), 81 Ind. App. 328, 143 N. E.
■ 515. Where no evidence is adduced to the contrary,
very slight evidence is sufficient to sustain a fact.
*Ferger* v. *Interprovincial Flour Mills* (1928), 80 Ind. App.
248, 140 N. E. 450."

Mr. Bahne, bank employee, having testified that plaintiff-
appellant's Exhibit No. 2, which was the resolution that had
been altered, was altered after it was in the bank's custody
was uncontroverted and no reason appearing for doubting
the accuracy of the observation or credibility of the witness,
his statement should be accepted as true.

This evidence standing alone, is, in our opinion, sufficient
to create an inference as to the bank's liability to plaintiff-
appellant.

Appellee bank further contends that at the close of plain-
tiff's evidence appellee bank made an oral motion that the
court find against the plaintiff and for the defendant bank on
the basis that no evidence was presented which would render
appellee bank liable to the plaintiff; that no objection was
raised to this motion by the plaintiff-appellant, who stated it
was not going to object to the motion. The bank cites cases
that it is the law in Indiana that objections not presented in
the trial court cannot be urged upon appeal. With that we
have no argument, but there was no necessity for objection by
the plaintiff as it had already been ruled against without plain-
tiff having an opportunity to object before the ruling, and the
cases cited by the bank are not applicable.

Appellee bank's contention that plaintiff-appellant expressly
acquiesced in the court's holding and has no legal basis on
which to press its appeal against the bank is without merit,
as, in our opinion, the fact that the plaintiff waived argument

on the motion was not an acquiescence in the court's granting a judgment for defendant-appellee bank at the close of plaintiff's evidence.

This was followed by the same kind of oral motion by the appellees Graber and Kinder. Objection was made by plaintiff-appellant to the granting of a judgment at the close of plaintiff's evidence for failure of the plaintiff to make its case. Plaintiff-appellant did object to the granting of the motion and gave its reasons, that the motion should not be sustained as to any of the defendants-appellees for the reason that the plaintiff-appellant had made a case against the defendants; and after which the court stated it was not impressed by plaintiff's case and the motions were sustained.

Plaintiff's only recourse after the granting of the motion for a judgment and entering the judgment was to file its motion to correct errors, as it timely did, and to appeal its cause of action to this court. Our courts have many times said that a party is not required to do a useless thing and in our opinion this needs no citation of authority.

Appellees Graber and Kinder have cited a number of cases to the court, which the court has read, and finds that the cases cited, except one, are not applicable for the reason that they were not cases where there was a motion sustained and a verdict directed or a judgment granted at the close of plaintiff's evidence on trial before the court, as the rule is different in cases where evidence of all parties is admitted before the court or jury from the rule in this case.

Appellees Kinder and Graber did cite the case of *Sparks* v. *Baldwin* (1965), 137 Ind. App. 64, 205 N. E. 2d 173, in which the court directed a verdict for the defendant at the close of plaintiff's evidence. This case does set out the Indiana rule as to when a verdict may be directed for the defendant. It further quotes: "Where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant", which is a quote from *Whitaker,*

*Administrator* v. *Borntrager, infra,* and which case is hereinafter more fully discussed by the court and in our opinion is not helpful to the defendants-appellees Graber and Kinder.

The case of *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734, held:

"When there is some evidence or legitimate inference supporting each material allegation of the complaint, the court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the party against whom the motion for a peremptory verdict is directed. [Citing cases.]

"In determining whether a peremptory instruction should be given the court must accept as true all facts which the evidence tends to prove and draw, against the party requesting such instruction, all inferences which the jury might reasonably draw. [Citing cases.]"

In the case of *Wyner* v. *Ellis* (1965), 136 Ind. App. 696, 204 N. E. 2d 662, the court, in discussing the rule on a motion for judgment at the conclusion of plaintiff's evidence, or at the conclusion of all the evidence, had this to say:

"The rule as enunciated by our courts is that a motion for a judgment at the conclusion of plaintiff's evidence or at the conclusion of all of the evidence is the same as a demurrer to the evidence and is to be tested by the same rules of law as a request for a peremptory instruction to a jury. Such a motion presents the question as to whether or not the evidence introduced on behalf of appellant, assuming it to be true, and considering as proved all which the evidence proves, or by legitimate inference tends to prove, establishes the appellant's case as laid. [Citing cases.]"

In the case of *V. H. Juerling & Sons, Inc.* v. *First National Bank* (1968), 143 Ind. App. 671, 242 N. E. 2d 111, the court said:

"The rule of law that a bank is presumed to know the signatures of its depositors, and that it pays forged checks at its peril, is too well settled to need the citation of authorities to sustain it. * * * "

If plaintiff-appellant's evidence raised a reasonable inference that Kinder and Graber were not the agents of Indianapolis Saenger Chor, Inc., then their transfer of the House Fund, Indianapolis Saenger Chor, to a savings account; and which savings account they withdrew in their own names by cashier's check on the same date of their filing the purported resolution of plaintiff-appellants naming them officers and removing said funds from the bank immediately after a transfer of the corporation's funds to the House Fund, Indianapolis Saenger Chor savings account, then the sustaining of the separate and several motions of each and all defendants for judgment at the close of plaintiff-appellant's evidence was contrary to law.

Bank employee Bahne testified that the plaintiff-appellant's resolution authorizing Zehner and Renholzberger to handle and withdraw House Fund, Indianapolis Saenger Chor, was altered by someone while in the bank's possession. As we have heretofore said, this witness' statements should be taken as true.

There is further evidence in the record from which reasonable inference may be drawn to sustain the material allegations of plaintiff-appellant's complaint.

The late Judge Cooper of this court, in *Cooper* v. *Teeters* (1969), 146 Ind. App. 150, 253 N. E. 2d 277, held:

"The appellant's first specification of error in her motion for a new trial alleged that the decision of the trial court in directing the jury to return a verdict for the defendants was contrary to law. In considering this allegation of error, it must be decided whether the evidence presented at the trial supported, without conflict, only one inference, which inference was in the favor of the defendants. *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734."

The case of *Tower Recreation, Inc.* v. *Beard* (1967), 141 Ind. App. 649, 231 N. E. 2d 154, quotes the law as follows:

" 'Whether or not director or officer has appropriated for himself something that in fairness should belong to his corporation is a factual question to be decided by reasonable inference from objective facts.' 19 Am. Jur., 2d, Corporations, § 1312, p. 720."

This court does not and will not weigh the evidence. Under the 1970 Rules of the Supreme Court, which has made very liberal the rules on appeal and the parties having not set out adequate pertinent parts of the evidence in the briefs, this court found it necessary to read the evidence in the transcript. This was necessary to get the full picture and all the facts and the complete truth of the situation so that the law could be applied to the true facts. In our opinion, the evidence presented at the trial supported, without conflict, one or more inferences, which inferences were in favor of the plaintiff-appellant and that the decision of the trial court on granting judgment in favor of the defendants-appellees and each of them at the close of plaintiff-appellant's evidence was contrary to law.

Where a case is reversed on only one specification of error and other specifications are raised, it is only necessary for the court to discuss the one point. *Selner* v. *Fromm, et al.* (1969), 145 Ind. App. 378, 251 N. E. 2d 127; *Board of Commissioners* v. *Flowers* (1964), 136 Ind. App. 597, 201 N. E. 2d 571.

This cause is reversed as to each and every defendant and the cause remanded to the trial court for a new trial.

Sullivan, P. J., Buchanan and Robertson, JJ., concur.

NOTE.—Reported in 274 N. E. 2d 728.